NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-802
25-P-993

CHARLES D. CLARKE

vs.

DONNA M. MURPHY.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case involves the dissolution of the parties' partnership (Partnership), the assets of which included the assets of the 158 Adams Realty Trust (Trust), which included a property in Newton.

Following a judgment in favor of the appellee, Charles D. Clarke, the judge appointed a receiver, who was "hereby instructed to take control of the Partnership and Trust assets, collect the rents, and to sell the assets at Public or Private sale and to make a final accounting of the Partnership and Trust assets to the Court." After paying Clarke's reasonable attorney's fees from the proceeds of the sale of the Partnership

_____

[1] Individually and as trustee of the 158 Adams Realty Trust.

and Trust assets, "the net proceeds from the operation and sale of the Partnership and Trust assets shall be equally divided between Charles D. Clarke and Donna M. Murphy."

Murphy appealed from this judgment to this court, and in a memorandum and order pursuant to Rule 23.0 of the Rules of the Appeals Court, as appearing in 97 Mass. App. Ct. 1017 (2020), a panel of this court affirmed the judgment. See Clarke v. Murphy, 104 Mass. App. Ct. 1118 (2024) (Clarke I).[2] There, in response to Murphy's argument, we concluded that, "the Trust's assets, including the Property, are assets of the Partnership, of which Clarke and Murphy each held a fifty percent interest." Id.

Murphy sought further appellate review, which was denied. See Clarke v. Murphy, 494 Mass. 1108 (2024). Subsequently, the judge ordered the receiver to "market the property . . . for sale and sell it as soon as possible." On May 7, 2025, a hearing was held on the receiver's emergency motion for an order authorizing the receiver to accept an offer to purchase the property and execute documents relating to the proposed sale. Murphy opposed this, and on May 8, 2025, the judge issued an

---

[2] Contrary to appellant's description, this opinion was unsigned. The panelists, Chief Justice Green and Justices Walsh and Smyth, are listed in order of seniority in the signature block.

order (first order) authorizing the receiver to proceed with the sale of the property.  Murphy appealed from the first order.

Subsequently, Murphy sought a stay, which was denied both in the trial court and by a single justice of this court.  On May 27, 2025, Murphy, purporting to act as trustee of the Trust, sold the property for $1,325,000 to herself as the sole trustee of another trust.  Clarke filed a complaint for contempt.  The receiver filed an emergency motion pertaining to the complaint for contempt, and on June 18, 2025, following a hearing, the judge issued an order (second order) declaring the purported trustee's sale of the property by Murphy null and void, removing Murphy as trustee of the trust, and declaring that the receiver was the only person with the authority to sell the property.  Murphy also appealed from the second order, and her two appeals were paired for consideration.

Discussion.  In our previous decision in Clarke I, we said, "As established in the Partnership Agreement, Murphy provided an initial $49,000 in cash to the Trust, and Clarke contributed $1,000.  Accordingly, Murphy initially owned ninety-eight percent of the beneficial interest in the Trust, while Clarke only owned two percent.  However, the Partnership Agreement provided that a share of . . . monthly rent payments [paid by Clarke] would be counted as capital contributions to the Trust and that Clarke's beneficial interest would increase accordingly

3

until he owned fifty percent of the Trust." We also said, "The parties created the Trust under the terms of the Partnership Agreement for the sole purpose of holding legal title to the Property. The Partnership Agreement required the Trust to purchase the Property, allocated the parties' beneficial interest in the Trust, and stipulated the lease terms between the Trust and [Classic Catering, Incorporated]. Because the essence of the partnership was the management of the property through the Trust, both are partnership assets."

Murphy makes a number of arguments in these two appeals. In her appeal from the first order, she argues that the judge erred in ordering the sale of a Trust asset. In her appeal from the second order, she argues that the original judgment left the Trust undisturbed; that she remains the trustee of the Trust; that the Trust itself is an asset of the Partnership, but that the property held in the Trust is not; that on instruction of the beneficiary, she was required to sell the property; that nothing in the judgment limited her authority to sell the Trust property; that her removal as trustee was an abuse of discretion; and that the receiver is not properly the sole person with authority to sell the property.

At the root of Murphy's position in both appeals are two arguments: first, that the Trust property is not an asset of the Partnership, and second, that the beneficial interests in

4

the property remain as they are listed on the schedule of beneficiaries created when the Trust was created, with her (Murphy) holding a ninety-eight percent interest in the property, and Clarke a two percent interest.

As described above, these issues were already decided against Murphy in Clarke I. That decision states the law of the case, see King v. Driscoll, 424 Mass. 1, 7-8 (1996), and therefore, Murphy's arguments fail.[3]

---

[3] Murphy also argues that the judge was without authority to remove her as trustee. She is wrong. Under G. L. c. 203, § 706 (b),

"The court may remove a trustee if:

(1) the trustee has committed a serious breach of trust;

(2) there is a lack of cooperation among co-trustees that substantially impairs the administration of the trust;

(3) because of unfitness, unwillingness or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; or

(4) there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust and a suitable co-trustee or successor trustee is available."

Given what the judge found to be Murphy's use of her position as trustee to wrongfully purport to sell the property and to record the deed in order to thwart the court's lawful order issued in the beneficiaries' best interests -- i.e., a serious breach of trust -- the judge's decision to remove her was well within his discretion.

We agree with Clarke that Murphy's two appeals, like her previous one, are frivolous, and therefore award fees and costs. In accordance with the procedure specified in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), Clarke may, within fourteen days of the issuance of the rescript in this matter, submit an application for his reasonably incurred attorney's fees and costs with the appropriate supporting materials. Murphy shall have fourteen days thereafter to file a response to that application.

Although it is not strictly relevant to our decision, which rests on the law of the case, we note that the parties written partnership agreement (Partnership Agreement) itself states that "in consideration of the mutual covenants and promises" it contains, the partners agreed on initial contributions of the parties to the Trust and their beneficial interests at that time and said, "in exchange for Charles D. Clarke's personal and individual guarantee on the Note, Mortgage and Lease, two-thirds of the monthly rent ($1,200) paid by the Lessee [(Clarke)] shall be applied toward that portion of equity for Charles D. Clarke until Charles D. Clarke's capital contribution is equal to Donna M. Murphy's contribution of $49,000 as described in Schedule A of this document."

Schedule A itself, labelled "Schedule of Beneficial Interests," shows the anticipated date of each contribution by

Clarke and the "% of Trust" that would be owned by the parties respectively, culminating in each owning a fifty percent beneficial interest beginning on July 10, 2007.  The judge found as a fact that K-1 Forms issued by Murphy as Trustee reflected that equal ownership interest.  And Murphy's own brief in Clarke I says, in the Statement of the Facts section, "The parties agreed they would share in the Trust according to the Schedule of Beneficial Interest attached to the [Partnership Agreement] as Schedule A."  As part of her argument, Murphy stated that the parties had an agreement "whereby Clarke could gain access to a portion of Murphy's interest in the Trust."  There was no dispute that at the outset, Murphy owned a ninety-eight percent interest in the Trust and Clarke owned a two percent interest. The Partnership Agreement included means for Clarke to equalize the parties' interests.

<div style="margin-left: 50%;">

Order entered May 8, 2025, affirmed.

Order entered June 18, 2025, affirmed.

By the Court (Rubin, Henry & Wood, JJ.[4]),

*Paul Little*

Clerk

</div>

Entered:  July 2, 2026.

---

[4] The panelists are listed in order of seniority.

7